# EXHIBIT 11

National Trust *for* Historic Preservation®

June 15, 2026

Ms. Jennifer Madello
Superintendent
George Washington Memorial Parkway
700 George Washington Memorial Parkway
McLean, VA 22101

**RE: Comments on Section 106 Assessment of Effects Report and Draft Programmatic Agreement for Triumphal Arch at Memorial Circle**

Ms. Madello,

The National Trust for Historic Preservation in the United States ("National Trust")[1] thanks the National Park Service for this opportunity to comment on the Assessment of Effects Report for the Triumphal Arch at Memorial Circle ("Effects Report") and the Draft Programmatic Agreement for the Triumphal Arch Project ("Draft PA").

The Effects Report and Draft PA are legally insufficient and require substantial revisions to achieve compliance with the National Historic Preservation Act ("NHPA") and its implementing regulations. 54 U.S.C. §§ 300101 et seq. and 36 C.F.R. Part 800. The proposed undertaking also fails to comply with the Commemorative Works Act, 40 U.S.C. §§ 8901–8910, the Height of Buildings Act, Pub. L. 61–196, 36 Stat. 452, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332, and Section 4(f) of the Department of Transportation Act, 49 U.S.C. § 303(c). We strongly urge the National Park Service ("NPS") to ensure full compliance with all relevant federal laws and regulations for this undertaking, especially given its high profile and controversial nature. To assist NPS, the National Trust has identified the following deficiencies in the Effects Report and Draft PA:

- The Effects Report and the Draft PA do not adequately consider the avoidance and minimization of adverse effects. The whole point of the Section 106 consultation process is to "develop and evaluate alternatives or modifications to the undertaking that could avoid, minimize or mitigate adverse effects on historic properties." 36 C.F.R. § 800.6(a). The NPS has failed to consider less harmful alternatives and modifications to the project that are being suggested by the consulting parties.

---

[1] The National Trust is a private non-profit corporation chartered by Congress in 1949 to further the historic preservation policy of the United States and to "facilitate public participation" in the preservation of our nation's heritage. 54 U.S.C. § 312102(a). The National Trust is headquartered in Washington, D.C. and has 27 historic sites open to the public. With more than one million members and supporters around the country, the National Trust works to protect significant historic sites and to advocate for historic preservation as a fundamental value in programs and policies at all levels of government.

600 14th Street NW, Suite 500, Washington, DC 20005
E law@savingplaces.org P 202.588.6035 F 202.588.6038 SavingPlaces.org

- The Effects Report correctly identifies 12 historic resources that would suffer "[T]he most substantial effects meeting the criteria of 36 CFR § 800.5(a)(1) ... all of which derive significance in part from their planned visual, commemorative, and spatial relationships across the Potomac River and through the monumental core."[2] However, the section on "Avoidance, Minimization, and Mitigation Measures" in the Effects Report fails to consider the avoidance and minimization of adverse effects for all of these substantially affected historic resources.[3] Instead, it only considers a limited direct sightline between the Lincoln Memorial and the entrance of Arlington National Cemetery to arrive at the conclusion that the height and scale of the proposed arch should not be reduced. This inappropriate limitation does not satisfy NPS's responsibility to consider the avoidance and minimization of adverse effects to all historic resources that would be adversely affected by the proposed project.

- The Draft PA's recitals should be amended to include descriptions of the 12 historic resources identified by the Effects Report as being most substantially affected by the proposed undertaking and their relationships to each other. Currently, only the George Washington Memorial Parkway and Memorial Circle are identified in the recitals, despite other historic resources being significantly impacted by the proposed project.

- The Effects Report and Draft PA do not adequately address the proposed project's impacts on Arlington National Cemetery. As the hallowed resting place of 400,000 veterans and their families, Arlington National Cemetery is a powerful reminder of American military sacrifice, and national unity, all within sight of the monumental core of the Nation's Capital. Distinguished by its rolling hillsides with uniform rows of solemn graves lined with powerful, unadorned headstones, Arlington National Cemetery is a living memorial that hosts hundreds of funeral services every month. The Arch, as proposed, would dominate the National Cemetery, and would be inconsistent with its solemn and hallowed character. The Effects Report does not record any meaningful efforts to avoid or minimize these significant adverse effects, instead narrowly focusing on a limited sightline between the entrance of Arlington National Cemetery and the Lincoln Memorial. The Effects Report and Draft PA do not adequately address the impact on Arlington House, the Eternal Flame, and Arlington National Cemetery and the view from those historic resources to the Lincoln Memorial, which will be blocked by the proposed Arch.

- The Effects Report and Draft PA do not adequately consider the proposed

---

[2] "Memorial Avenue Corridor Cultural Landscape, Arlington Memorial Bridge, Lady Bird Johnson Park Cultural Landscape, Arlington National Cemetery Historic District, Arlington House Historic District, Arlington House (Robert E. Lee Memorial), Arlington House Cultural Landscape, Lincoln Memorial Cultural Landscape, the Lincoln Memorial, National Mall Site, National Mall Historic District, and The Mall Cultural Landscape." Pg. 21-22, *Triumphal Arch at Memorial Circle Assessment of Effects Report.*

[3] Pg. 22-23, *Triumphal Arch at Memorial Circle Assessment of Effects Report.*

undertaking's impacts on the Lincoln Memorial. The proposed arch is double the size of the Lincoln Memorial and would diminish and disrupt its iconic and powerful presence. The Effects Report does not document any consideration of the avoidance or minimization of the adverse effects that would be imposed on the Lincoln Memorial due to the unprecedented height and scale of the proposed Arch, and the Draft PA does not provide for any such consideration in the future. As with Arlington National Cemetery, the Effects Report's consideration of the avoidance or minimization of adverse effects on the Lincoln Memorial due to the height and scale of the proposed arch is inappropriately limited only to a single sightline rather than the totality of adverse effects.

- The abnormally short 10-day comment period for this undertaking is inadequate to reasonably meet NPS's consultative responsibilities under the NHPA. "[T]he agency official should plan consultations appropriate to the scale of the undertaking." 36 C.F.R. § 800.2(a)(4). "[T]he agency official should consult with the SHPO/THPO in a manner appropriate to the agency planning process for the undertaking and to the nature of the undertaking and its effects on historic properties." *Id.* § 800.3(c)(3). The proposed undertaking would dramatically and jarringly alter some of the most hallowed and important landmarks in our nation and would inflict significant adverse effects upon them. It is inappropriate and unreasonable for the consultation process for such a major undertaking to be limited to only 10 days. This severe limitation of the Section 106 consultation process is highly irregular and potentially inconsistent with the NHPA.

- The use of a Programmatic Agreement is inappropriate for this undertaking. None of the requirements for programmatic agreements established in 36 C.F.R. §§ 800.14(b) and 800.14(b)(1) are met: this undertaking is not a program, a complex project situation, nor does it encompass multiple undertakings, and it does not meet any of the criteria listed in § 800.14(b)(1). The project's height, scale, mass, architectural style, and the adverse effects that it will inflict upon numerous historic resources are all known, with only minor issues like landscaping yet to be resolved. There is thus no legal justification for the use of a Programmatic Agreement for this undertaking. We encourage NPS instead to develop a Memorandum of Agreement.

**<u>Failure to Comply with Section 110(f) of the NHPA for National Historic Landmarks</u>**

- The requirements of Section 110(f) of the NHPA have not been met. When an undertaking "may directly and adversely affect" a National Historic Landmark ("NHL"), Section 110(f) requires that the federal agencies "to the maximum extent possible undertake such planning and actions as may be necessary to minimize harm to the landmark." 54 U.S.C. § 306107. NPS has not come close to meeting the "maximum extent possible" threshold here.

- Appendix D to the Effects Report identifies seven NHLs within the Area of Potential Effects, and one of them – the Pentagon – is acknowledged to have the potential for "direct and indirect adverse effects," thus triggering the requirements of Section

110(f).[4] In addition, the Fort Myer Historic District and Quarters 1 are acknowledged to expect adverse indirect effects. NPS has failed to engage in *any* efforts to avoid or minimize adverse effects to these National Historic Landmarks, and the irregularly short Section 106 consultation for this undertaking inherently precludes its qualification as a maximal planning effort. Further, there is no evidence that NPS's National Historic Landmark program has been included in this consultation, which is standard practice to ensure Section 110(f) compliance.

**Failure to Comply with the Height of Buildings Act**

- The proposed undertaking's non-compliance with the Height of Buildings Act is obvious and indisputable. Pub. L. 61–196, 36 Stat. 452. Given that non-compliance with this federal law is also the cause of the proposed undertaking's most severe adverse effects, NPS should require the correction of this legal deficiency prior to concluding the Section 106 consultation process. Compliance with applicable federal law is a minimal baseline for achieving reasonable avoidance and minimization of adverse effects as required by the NHPA. NPS cannot reasonably permit a project that violates federal law and inflicts substantial adverse effects upon historic resources via that violation.

**Failure to Comply With Section 4(f) of the Department of Transportation Act**

- Section 4(f) of the Department of Transportation Act prohibits the "use" of historic sites and parks that will be adversely affected, unless there is no feasible and prudent alternative to doing so, and the project includes "all possible planning to minimize harm" to the adversely affected property. 49 U.S.C. § 303(c); 23 C.F.R. Part 774. Both the Federal Highway Administration ("FHWA") and the Federal Aviation Administration ("FAA") have review and approval roles for this project, and their approval must be preceded by compliance with Section 4(f), which has not occurred.

- The FHWA is listed as a Consulting Party on page 4 of the Effects Report. However, the FAA is *not* included in the Consulting Party list, even though the FAA has been involved in reviewing the height of the proposed Arch, in light of its proximity to National Airport and the risk of interference with flight patterns for approaching and departing flights. The FAA needs to be added as a Consulting Party.

- Substantively, the proposed project fails to comply with Section 4(f) because there are feasible and prudent alternatives that would avoid or minimize harm to the affected historic properties, and the plans fail to include all possible planning to minimize harm.

**Failure to Comply With the National Environmental Policy Act**

- The Draft PA states (in the second-to-last Whereas Clause on p.3) that "NPS

[4] Pg. 23-24, *Triumphal Arch at Memorial Circle Assessment of Effects Report.*

completed an EA, published June 5, 2026, as part of NPS's NEPA compliance and issued the Finding of No Significant Impact." This statement is apparently false. There is no evidence that an EA has ever been published. It is not included within the NPS's PEPC website for this project, and is not referenced in any Federal Register notice between June 5 and June 15.

- In our view, compliance with NEPA requires the preparation of a full Environmental Impact Statement in this case, because the proposed project is a "major Federal action[] significantly affecting the quality of the human environment," per 42 U.S.C. § 4332(2)(C). The public opposition to the proposed Arch has been overwhelming, and the project would result in adverse effects to a large number of nationally significant historic and cultural resources.

**Commemorative Works Act and Lack of Congressional Authorization**

- Finally, we remind the National Park Service that the proposed undertaking requires the approval of Congress pursuant to the Commemorative Works Act at 40 U.S.C. §§ 8901-8909 (CWA) and 40 U.S.C. § 8106, which requires authorization of Congress for a structure erected on any public grounds of the Federal Government in the District of Columbia.

The National Trust again thanks NPS for this opportunity to comment on the proposed undertaking. We strongly urge NPS to extend the timeline for this Section 106 consultation to allow for adequate engagement with consulting parties and to thoughtfully address the issues identified above. Substantially more effort is required for this proposed undertaking to achieve NHPA compliance, and the National Trust would be happy to assist NPS in meeting its legal obligations any way that we can. Please let us know if you would like to meet to discuss any of the issues we have raised in this letter, and thank you for your consideration of our comments.

Sincerely,

Elizabeth Merritt

Elizabeth S. Merritt
Deputy General Counsel

cc: Tammy Stidham, Associate Regional Director – Lands & Planning, NPS
Turkiya Lowe, Acting Federal Preservation Officer, NPS
Megan Olsen, Acting Federal Preservation Officer, US Dep't of the Interior
Jaime Loichinger, Advisory Council on Historic Preservation