# EXHIBIT 12

National Capital Planning Commission
401 9th Street, NW North Lobby, Suite 500 Washington, DC 20004 Tel 202.482.7200 www.ncpc.gov

# MEMORANDUM

**TO:** National Capital Planning Commissioners

**FROM:** Meghan Hottel-Cox, General Counsel & Secretariat

**DATE:** July 2, 2026

**RE:** **The National Capital Planning Commission's (NCPC) Historic Application of the Height of Buildings Act (HBA) to Federal Projects**

---

This memorandum addresses questions related to the Height of Buildings Act (HBA) and its stewardship by the National Capital Planning Commission (NCPC) that arose in the context of the Department of Interior's application for the new Triumphal Arch project (the "**Project**"). Historically, NCPC has publicly stated that the HBA is binding on the federal government. The Project applicant provided a legal explanation in the June 5, 2026 submission detailing why, in their view, the HBA is not binding on federal projects. As the Commission assesses the Project, whether the HBA is binding on federal projects will be a key issue that must be addressed.

This memorandum is intended to provide the Commission context of NCPC's position hitherto in order to prepare the Commission for consideration of this issue and the Project overall. First, this memo explains the history of the HBA. Next, the memo details the rationale and context of NCPC's past interpretation of the HBA as applying to federal projects. Finally, the memo addresses the follow up actions that will be necessary to guide the future of NCPC's role planning the National Capital Region if it reverses its position on the HBA.

## I. History of the HBA

The federal government has focused on building height in the District of Columbia since the 1790s when the city was first established as the national capital.[1] However, as construction technology increased and taller buildings became feasible, concerns arose about fire safety and other issues related to building height.[2] In 1899, Congress passed an act limiting the heights of buildings in Washington, D.C., based on construction type.[3] The 1899 Act also explicitly exempted federal buildings from its height limits.[4] Eleven years later, Congress passed the Height of Buildings Act of 1910 (HBA), which has been the key, comprehensive law on building height limitations in the District of Columbia ever since.[5] The HBA noted

---

[1] *See* Committee on the District of Columbia, House of Representatives, Building Height Limitations, 1976, 94th Cong., 2nd sess., Washington, DC: Government Printing Office, 5.
[2] *See id* at 15
[3] *See* Act of March 1, 1899, ch. 322, 30 Stat. 922 (1899).
[4] *See id.*
[5] *See* Act of June 1, 1910, ch. 263, Pub. L No. 61-196, 36 Stat. 452 (1910) ("**HBA**"); *see, also*, D.C. Code §§ 6-601.01-6-601.09.

National Capital Planning Commission 401 9th Street, NW North Lobby, Suite 500 Washington, DC 20004 Tel 202.482.7200 www.ncpc.gov

that "all laws in conflict herewith are hereby repealed" and did not include a specific exemption for federal projects.[6]

The HBA was passed prior to the Home Rule Act of 1973, and thus initially many decisions regarding the HBA were made by the Commissioners of the District of Columbia.[7] However, upon the passage of Home Rule, the Mayor has been in charge of enforcing the HBA on District and private development, though the District government may not implement any laws or regulations that are inconsistent with the HBA.[8] Various federal agencies have had roles related to the HBA for federal projects, including individual land-owning agencies (e.g. the National Park Service, General Services Administration), the Commission of Fine Arts, and, beginning in 1938, NCPC.

## II. NCPC's Historic Position on the HBA's Applicability to Federal Projects

Since taking on its in-lieu-of-zoning approval power over federal projects in 1938, NCPC has operated with the understanding that the HBA was intended to bind federal projects and has applied the HBA accordingly. This application has not only been applied through NCPC's plan review role but has also been incorporated into the *Comprehensive Plan for the National Capital's* Federal Elements (the "***Comprehensive Plan***") and other planning and policy documents. This section provides additional details on the legal rationale for that position and the ways that position has been incorporated into broader NCPC policy documents.

### A. Legal Rationale for NCPC's Position

While NCPC has consistently taken the position that the HBA is binding on federal projects, the most detailed account of NCPC's position was provided in correspondence with the Department of Justice (DOJ) in 1987 regarding the Old City Post Office project. In that instance, the project developer specifically argued that the HBA was not binding on federal projects, and NCPC informed DOJ that, in NCPC's legal opinion, the HBA is binding on the federal government. NCPC's legal reasoning was laid out in a 27-page legal opinion shared with DOJ.

First, NCPC historically noted the plain text of the HBA refers to "all buildings in the District of Columbia" and other references to buildings in the HBA are used holistically without qualifications.[9] Thus, taken on its face, the HBA binds the federal government because there is no textual basis to assume a federal exemption exists.

Further, NCPC also examined the legislative history of the HBA, which indicates Congressional intent to bind the federal government as well as private development. This conclusion is mainly drawn from the fact that the predecessor 1899 Height Act included an explicit exemption for federal buildings, which was removed in the 1910 HBA. In proposing

---

[6] *See* HBA §9.

[7] *See* HBA §§ 4, 5.

[8] *See* D.C. Code § 6-601.05(h); District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, 87 Stat. 774, 813 (1973) codified at D.C. Code §§1-201; 1-602(a)(6).

[9] *See* HBA §§1, 5.

National Capital Planning Commission
401 9th Street, NW North Lobby, Suite 500 Washington, DC 20004 Tel 202.482.7200 www.ncpc.gov

the 1910 HBA, Congress expressly omitted some provisions of the 1899 Act and expressly carried others forward. Thus, NCPC concluded the lack of a federal exemption in 1910 was intentional.

NCPC responded to the argument that the exemption from the 1899 Height Act was still operative by noting that the non-conflicting repeal provision of the HBA was intended to repeal the 1899 Height Act in its totality, as well as its amendments and other potentially applicable height acts at the time. That position is supported by multiple comments in the legislative record for the 1910 HBA, including a letter from the President of the Board of Commissioners of the District of Columbia to the House of Representatives' Chairman of the Committee on the District of Columbia, adopted in the Committee report, stating "There are various laws now existing in relation to this matter, and the object of the proposed bill is to put in concrete forms these various laws and the building regulations on the same subject which are somewhat conflicting and obscure."[10] The Commissioners also provided a paragraph-by-paragraph explanation of the 1910 HBA which was adopted into the Congressional record, which acknowledged the differences and similarities between the 1899 and 1910 Acts, and in which there is no mention of the federal exemption.[11] Because the legislature adopted such a detailed report analyzing each paragraph of the law, Congress had to have been cognizant of the federal exemption omission, and by implication, approved of it.

NCPC also noted that its in-lieu-of-zoning-authority also reinforces the position that the HBA is binding on federal buildings. The Zoning Enabling Act of 1938 gave NCPC the authority to regulate the "location, height, bulk, number of stories, and size of Federal public buildings in the District of Columbia."[12] In that Act, Congress exempted Federal public buildings from the zoning provisions set out in sections 5-413 to 5-432 of the D.C. Code; however, the HBA was codified at the time in sections 5-401 to 5-409 of the D.C. Code.[13] By explicitly noting that federal buildings are exempt from specific provisions of zoning, and yet explicitly *not* including the provisions that enforce the HBA, the 1938 Act implies that federal buildings are not exempt from the HBA.

Finally, NCPC rejected the notion that the lack of a specific federal enforcement authority in the HBA precluded enforcement of the HBA by the government in federal court. Specifically, NCPC acknowledges that that HBA is silent on federal enforcement authority but provides explicit enforcement authority for private actions.[14] However, as the federal agency entrusted with overseeing the planning of the federal establishment in the nation's capital, NCPC does not have the discretion to ignore applicable federal laws even if they are devoid of specific enforcement authority. Neither NCPC's in-lieu-of-zoning authority nor the National Capital Planning Act of 1952, as amended, provide for enforcement mechanisms, but it is clear the

---

[10] Senate, 61st Congress, 3d sess., April 22, 1910, Rept. No. 581.
[11] House of Representatives, 61st Cong., 2nd sess., March 10, 1910, Rept. No. 720.
[12] Act of June 20, 1938, 52 Stat. 798, ch. 543, sec. 6 (1938), as amended; codified at D.C. Code § 6-641.06.
[13] *See* Act of June 20, 1938, 52 Stat. 798, ch. 543, sec. 6 (1938), as amended; *see, also*, D.C. Code §§5-401-5-409; 5-413-5-432 (as amended through 1938).
[14] *See* HBA §8; *see, also,* D.C. Code §6-601.08.

National Capital Planning Commission 401 9th Street, NW North Lobby, Suite 500 Washington, DC 20004 Tel 202.482.7200 www.ncpc.gov

federal government is bound by both.[15] The same conclusion should apply here, making federal projects subject to the HBA.

B. Consistent Application of NCPC Interpretation

In addition to the position taken on the Old City Post Office building, NCPC also reinforced the HBA related to approvals of the FBI building, the Defense Office Building in the Anacostia-Bolling Urban Renewal Area, and the Pan American Health Organizations headquarters building. Because federal projects have not regularly pushed the boundaries of the HBA, the issue has not regularly come before NCPC, but when it has, NCPC has repeatedly asserted the binding nature of the HBA on federal buildings.

C. NCPC's Policy Incorporation of the HBA

Based on this legal rationale, NCPC has incorporated the HBA into its central planning policy documents. Most critically, the *Comprehensive Plan* calls for NCPC to "preserve Washington's picturesque, horizontal character, and reinforce the Height Act."[16] The *Comprehensive Plan* also refers to the HBA as one of "two of the most formative contributors to Washington's form and character" along with Plan of the City of Washington (collectively, the L'Enfant and McMillan Plans).[17] The HBA is further woven throughout the *Comprehensive Plan's* Federal Elements, including in the Introduction Framework, the Urban Design Element, and the Historic Preservation Element.[18] In addition to the *Comprehensive Plan*, NCPC has incorporated compliance with the HBA into the project Submission Guidelines, which guides applicants and staff in reviewing applications to NCPC.[19] NCPC has also incorporated its role in applying the HBA on its website, noting that "[the HBA] is implemented through the District's Zoning Regulations for private property and through NCPC's review of development proposals on federal property."[20]

In conclusion, whenever the question has been raised, NCPC has consistently taken the position that the HBA is binding on federal projects and has applied the HBA through project review. Further, NCPC has incorporated the HBA into its policy documents to implement its role in applying the HBA to federal projects.

---

[15] *See, both* D.C. Code § 6-641.15; *and* 40 U.S.C. §§ 8701 *et. seq.*
[16] NCPC, *Comprehensive Plan for the National Capital*, Federal Elements – Urban Design, Policy UD.B.1.3 (2026).
[17] NCPC, *Comprehensive Plan for the National Capital*, Federal Elements – Urban Design Technical Addendum I (p. 1) (2026).
[18] *See, e.g.*, NCPC, *Comprehensive Plan for the National Capital*, Federal Elements – Introduction (p. 5); Urban Design (pp. 3, 5, 13, 14, 19, 22, 27, 43); Urban Design Technical Addendum (pp. 1, 4, 6, 10, 11, 36); Historic Preservation (pp. 1, 12) (2026), *available at* https://www.ncpc.gov/plans/compplan/.
[19] *See, e.g.*, NCPC, Submission Guidelines (pp. 31, 57, 86, 92) (2026), *available at* https://www.ncpc.gov/docs/Submission_Guidelines_Jan2026.pdf.
[20] *See* NCPC, About Us/Legislative Authorities/Height of Buildings Act, *available at* https://www.ncpc.gov/about/authorities/.

National Capital Planning Commission
401 9th Street, NW North Lobby, Suite 500 Washington, DC 20004 Tel 202.482.7200 www.ncpc.gov

## III. Next Steps if NCPC's HBA Position is Reversed

Because the HBA has been a key limiting principle since at least 1938 for federal projects in the District of Columbia, there are potential impacts that could stem from a reversal of NCPC's position that the HBA binds federal projects. If the HBA no longer applies to federal property in the District, it could fundamentally reshape the city's architectural fabric, the balance of local vs. federal authority, and the visual character of the nation's capital. Thus, any change to application of the HBA must consider these practical impacts.

As detailed above, NCPC has long viewed not only the HBA as central to its work but binding on applicants, and NCPC policies and practices reflect that understanding. If the Commission reverses that position, NCPC staff requests the Commission provide policy guidance at a future meeting on the role of the HBA in future planning work. For instance, assuming the HBA will still be considered a key guide for project review, the Commission should provide input and guidance on what factors or considerations in a project would warrant deviation from the limitations otherwise prescribed by the HBA. Once NCPC staff understands the Commission's intent for the HBA on NCPC projects moving forward, staff can begin the process of updating the *Comprehensive Plan*, Submission Guidelines, and other policies and practices to reflect any changes in NCPC's position on the HBA.

## IV. Conclusion

In summary, since assuming its in-lieu-of-zoning approval power over federal projects in 1938, NCPC maintained the position that the HBA was intended to bind federal projects and has enforced the HBA accordingly. However, if NCPC reverses its historic interpretation of the HBA and finds it non-binding on federal projects, additional guidance will be needed at a future meeting to update NCPC policies and practices moving forward.

Please feel free to reach out to me at Meghan.Hottel-Cox@NCPC.gov if you have any questions regarding this information or would like to discuss further.

MHC