**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RORY KENNEDY,<br><br>MAXWELL TAYLOR KENNEDY,<br><br>CHRISTOPHER G. KENNEDY,<br><br>KERRY KENNEDY,<br><br>COURTNEY KENNEDY,<br><br>HON. KATHLEEN KENNEDY TOWNSEND,<br><br>HON. JOSEPH P. KENNEDY II,<br><br>HON. JOSEPH P. KENNEDY III,<br><br>and EDWARD M. KENNEDY, JR.,[1]<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States,<br>White House Office<br>1600 Pennsylvania Avenue, NW<br>Washington, DC 20500,<br><br>VINCE HALEY, in his official capacity as Director of the Domestic Policy Council,<br>1600 Pennsylvania Avenue, NW<br>Washington, DC 20500,<br><br>EXECUTIVE OFFICE OF THE PRESIDENT OF THE UNITED STATES,<br>1600 Pennsylvania Avenue, NW<br>Washington, DC 20500, | Civil Action No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

[1] Plaintiffs' addresses not included in the caption are being filed under seal by notice pursuant to LCvR 5.1(c)(1).

DOUG BURGUM, in his official capacity as
Secretary of the U.S. Department of the
Interior,
1849 C Street, NW
Washington, DC 20240,

DEPARTMENT OF THE INTERIOR,
1849 C Street, NW
Washington, DC 20240

and NATIONAL PARK SERVICE
1849 C Street NW
Washington, DC 20240,

*Defendants*.

## INTRODUCTION

1. President Donald J. Trump is attempting to unlawfully erect a massive arch that will permanently cast shadows over and damage historically significant sightlines to the existing gravesites and memorials established in the Kennedy family's honor at Arlington National Cemetery, as well as to the memorials of hundreds of thousands of fallen American heroes.

2. Plaintiffs Rory Kennedy, Maxwell Taylor Kennedy, Christopher G. Kennedy, Kerry Kennedy, Courtney Kennedy, Hon. Kathleen Kennedy Townsend, and Hon. Joseph P. Kennedy II, are the children of Senator Robert F. Kennedy and Ethel Kennedy. Plaintiff Hon. Joseph P. Kennedy III is the grandson of Senator Robert F. Kennedy and Ethel Kennedy. Plaintiff Edward M. Kennedy, Jr. is the son of Senator Edward M. Kennedy. Robert, Edward, and Ethel are buried at Arlington National Cemetery near their brother, President John F. Kennedy. Plaintiffs' family was instrumental in the creation of the Kennedy Gravesites at Arlington National Cemetery, including the placement of the Lt. Joseph P. Kennedy, Jr., Memorial, next to his brothers' burial sites, as well. Plaintiffs bring this action to protect the Kennedy family's sacred Gravesites from Defendants' unlawful construction project.

3. At President Trump's behest, Defendants have raced forward to build a new

Independence Arch in Memorial Circle in Washington, D.C. The Arch is planned to be at least 250 feet tall—more than double the size of the Lincoln Memorial and the equivalent of a twenty-five-story office building. Its location in Memorial Circle would situate the monument on an axis between the Lincoln Memorial and Arlington National Cemetery, obstructing a line of sight that was designed to represent the unification of the Nation following the Civil War and that has existed for nearly a century. The Arch will also obstruct the clear sightline of the Kennedy Gravesites and the John F. Kennedy Eternal Flame, in Arlington National Cemetery, from the Arlington Memorial Bridge, destroying an essential element of the Gravesites' design; and, according to a forensic study, the Arch will permanently cast a shadow over the Kennedy Gravesites and the graves of servicemen and women who made the ultimate sacrifice for this country.

4. By statute, congressional approval is required for construction of symbolic and commemorative works in the Nation's capital. Furthermore, a host of other statutes impose procedural requirements that must be satisfied before erecting a monument on Memorial Circle.

5. Nevertheless, the National Park Service ("NPS") and the Department of the Interior ("DOI") (collectively, hereafter, "Agency Defendants") took unlawful steps to begin erecting the Arch, granting final authorization on November 5, 2026, for construction of an arch to commence in Memorial Circle in accordance with design, site, and building plans developed by Agency Defendants.

6. Agency Defendants' final agency action to approve construction of a commemorative monument that Congress has not authorized on NPS land in Washington, D.C., violates the Commemorative Works Act of 1986.

7. This final agency action is also arbitrary and capricious. Throughout the administrative process, Agency Defendants' own findings consistently revealed that the design,

site, and building plans for the Arch will, if implemented, cause irrevocable adverse impacts on the surrounding area and that public sentiment strongly disfavors the project. Nonetheless, in issuing final authorization for construction to begin in accordance with those plans, Agency Defendants disregarded these findings, refused to consider alternative sites or meaningfully alternative designs, and charged forward to a predetermined result, contrary to law.

8. The Kennedy Gravesites at Arlington National Cemetery should remain unimpeded and unhampered as a solemn and sacred memorial to the legacy of the Kennedy family, including Senators Robert F. Kennedy and Edward M. Kennedy—each of whom served with honor and distinction, and sacrificed greatly for their country—as always intended. The Arch would significantly damage the memorial to the Kennedys, as well as the heroes who eternally rest at Arlington National Cemetery.

9. Defendants' actions violate the Administrative Procedure Act and are *ultra vires*. This Court should declare unlawful and enjoin construction of the Arch.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) and (e)(1).

## PARTIES

12. Plaintiff Rory Kennedy is the daughter of Senator Robert F. Kennedy and Ethel Kennedy, and the niece of President John F. Kennedy, Senator Edward M. Kennedy, and Lt. Joseph P. Kennedy, Jr. Ms. Kennedy has personal and aesthetic interests in the integrity of the Kennedy Gravesites, where her parents and uncles are buried, the unobstructed view of the JFK Eternal Flame from the Memorial Bridge, and the unobstructed view between Arlington National

Cemetery and the Lincoln Memorial.

13. Plaintiff Maxwell Taylor Kennedy is the son of Senator Robert F. Kennedy and Ethel Kennedy, and the nephew of President John F. Kennedy, Senator Edward M. Kennedy, and Lt. Joseph P. Kennedy, Jr. Mr. Kennedy has personal and aesthetic interests in the integrity of the Kennedy Gravesites, where his parents and uncles are buried, the unobstructed view of the JFK Eternal Flame from the Memorial Bridge, and the unobstructed view between Arlington National Cemetery and the Lincoln Memorial.

14. Plaintiff Christopher G. Kennedy is the son of Senator Robert F. Kennedy and Ethel Kennedy, and the nephew of President John F. Kennedy, Senator Edward M. Kennedy, and Lt. Joseph P. Kennedy, Jr. Mr. Kennedy has personal and aesthetic interests in the integrity of the Kennedy Gravesites, where his parents and uncles are buried, the unobstructed view of the JFK Eternal Flame from the Memorial Bridge, and the unobstructed view between Arlington National Cemetery and the Lincoln Memorial.

15. Plaintiff Kerry Kennedy is the daughter of Senator Robert F. Kennedy and Ethel Kennedy, and the niece of President John F. Kennedy, Senator Edward M. Kennedy, and Lt. Joseph P. Kennedy, Jr. Ms. Kennedy has personal and aesthetic interests in the integrity of the Kennedy Gravesites, where her parents and uncles are buried, the unobstructed view of the JFK Eternal Flame from the Memorial Bridge, and the unobstructed view between Arlington National Cemetery and the Lincoln Memorial.

16. Plaintiff Courtney Kennedy is the daughter of Senator Robert F. Kennedy and Ethel Kennedy, and the niece of President John F. Kennedy, Senator Edward M. Kennedy, and Lt. Joseph P. Kennedy, Jr. Ms. Kennedy has personal and aesthetic interests in the integrity of the Kennedy Gravesites, where her parents and uncles are buried, the unobstructed view of the JFK

Eternal Flame from the Memorial Bridge, and the unobstructed view between Arlington National Cemetery and the Lincoln Memorial.

17. Plaintiff Hon. Kathleen Kennedy Townsend is the daughter of Senator Robert F. Kennedy and Ethel Kennedy, and the niece of President John F. Kennedy, Senator Edward M. Kennedy, and Lt. Joseph P. Kennedy, Jr. Ms. Kennedy has personal and aesthetic interests in the integrity of the Kennedy Gravesites, where her parents and uncles are buried, the unobstructed view of the JFK Eternal Flame from the Memorial Bridge, and the unobstructed view between Arlington National Cemetery and the Lincoln Memorial.

18. Plaintiff Hon. Joseph P. Kennedy II is the son of Senator Robert F. Kennedy and Ethel Kennedy, and the nephew of President John F. Kennedy, Senator Edward M. Kennedy, and Lt. Joseph P. Kennedy, Jr. Mr. Kennedy has personal and aesthetic interests in the integrity of the Kennedy Gravesites, where his parents and uncles are buried, the unobstructed view of the JFK Eternal Flame from the Memorial Bridge, and the unobstructed view between Arlington National Cemetery and the Lincoln Memorial.

19. Plaintiff Hon. Joseph P. Kennedy III is the grandson of Senator Robert F. Kennedy and Ethel Kennedy, and the great-nephew of President John F. Kennedy, Senator Edward M. Kennedy, and Lt. Joseph P. Kennedy, Jr. Mr. Kennedy has personal and aesthetic interests in the integrity of the Kennedy Gravesites, where his grandparents and great-uncles are buried, the unobstructed view of the JFK Eternal Flame from the Memorial Bridge, and the unobstructed view between Arlington National Cemetery and the Lincoln Memorial.

20. Plaintiff Edward M. Kennedy, Jr., is the son of Senator Edward M. Kennedy, and the nephew of President John F. Kennedy, Senator Robert F. Kennedy, and Lt. Joseph P. Kennedy, Jr. Mr. Kennedy has personal and aesthetic interests in the integrity of the Kennedy Gravesites,

where his father and uncles are buried, the unobstructed view of the JFK Eternal Flame from the Memorial Bridge, and the unobstructed view between Arlington National Cemetery and the Lincoln Memorial.

21. Defendant Donald J. Trump is the President of the United States. Upon information and belief, President Trump has planned and directed the building of the Arch, including its design and location on Memorial Circle. President Trump is sued in his official capacity.

22. Defendant Vince Haley is the Director of the White House Domestic Policy Council, a department in the White House, and is overseeing the project to construct the Arch. He is sued in his official capacity.

23. Defendant Executive Office of the President of the United States is a federal entity headquartered in Washington, D.C. Upon information and belief, the Executive Office of the President is directing or administering the plan to construct the Arch.

24. Defendant Doug Burgum is the Secretary of the Department of the Interior. He is sued in his official capacity.

25. Defendant Department of the Interior is a federal agency headquartered in Washington, D.C., with responsibility for protecting and managing the Nation's natural resources and cultural heritage.

26. Defendant National Park Service is a federal agency within the Department of the Interior and was established by statute to "promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units, which purpose is to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in

such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101. National Park Service is responsible for administering and maintaining the land on Memorial Circle, which is located in Lady Bird Johnson Park.

## FACTUAL BACKGROUND

### Creation and Design of Memorial Circle

27. From its creation as the Nation's capital, Congress intended the District of Columbia to be a planned city where the creation and placement of monuments would be subject to careful and deliberate design, befitting the symbolic importance of the District.

28. For over 200 years, development of the District has followed Pierre Charles L'Enfant's 1791 plan. This plan emphasized reciprocal views of the monuments in the District along an east-west axis extending from the U.S. Capitol to the Washington Monument along a "Grand Avenue" that eventually became the National Mall. L'Enfant also planned a north-west axis between the White House and Congress, connecting the Executive and Legislative branches along Pennsylvania Avenue.[2]

29. In 1901, the U.S. Senate established a Park Commission, also known as the McMillan Commission, to develop a plan for the monumental core and park system of the District of Columbia. Among their proposals was the creation of a national monument to honor President Abraham Lincoln. "Expanding on the views and vistas created by the 1791 L'Enfant Plan," the Commission sited the Lincoln Memorial as "the western anchor along the [capital's] major east-west vista—in line with the Washington Monument and the U.S. Capitol."[3]

---

[2] *See* Francis Fukuyama, *L'Enfant's Washington*, The American Interest (May 1, 2007), https://www.the-american-interest.com/2007/05/01/lenfants-washington/.; *Views and Vistas of the Lincoln Memorial Cultural Landscape*, National Park Service (last updated Oct. 10, 2024), https://www.nps.gov/articles/000/lincoln-memorial-cultural-landscape-views-and-vistas.htm.
[3] *Id*.

30. The Commission proposed a bridge linking the Lincoln Memorial with Arlington National Cemetery "designed to show the strength of a united nation by joining a memorial on the north side of the Potomac River (the Lincoln Memorial) with one on the south (Arlington House, the Robert E. Lee Memorial)." Arlington Memorial Bridge was designed to connect and create an unobstructed, reciprocal view between the Lincoln Memorial and Arlington House that would serve as "a monument to the sacrifices and valor of our nation's military personnel and a symbolic link between north and south."[4]

31. Arlington Memorial Bridge was intentionally designed not to obstruct views between Arlington House and the Lincoln Memorial.[5]

32. Arlington Memorial Bridge holds further symbolic meaning as the connection between Washington, D.C., and Arlington National Cemetery, our Nation's most hallowed ground and, today, the final resting place for more than 400,000 active-duty service members, veterans, and their family members. Arlington Memorial Bridge provides a ceremonial entrance to the District of Columbia from Virginia, and a ceremonial entrance from the District to Arlington National Cemetery.

33. Memorial Circle, a traffic circle on Lady Bird Johnson National Park, connects Arlington Memorial Bridge to Memorial Avenue, providing a ceremonial gateway to Arlington National Cemetery. Seven memorials line Memorial Avenue, conceived as an "Avenue of Heroes," including the Women in Military Service for America Memorial. Together, Arlington Memorial Bridge, Memorial Circle, Memorial Avenue, and the entrance to Arlington National Cemetery are called "Memorial Avenue Corridor" and are "a major element of…the monumental

[4] *Arlington Memorial Bridge & Avenue*, National Park Service, (last updated April 5, 2023) https://www.nps.gov/gwmp/planyourvisit/memorialave.htm.

[5] Report of the Arlington Memorial Bridge Commission, S. Doc. No. 68-95 (Apr. 22, 1924).

core of Washington D.C."[6]

34. Memorial Circle sits within the District of Columbia on land administered by NPS, directly on the visual axis that connects the Lincoln Memorial with Arlington House, the Robert E. Lee Memorial in Arlington National Cemetery.

**The Kennedy Gravesites**

35. After President John F. Kennedy was killed, the Kennedy family wanted his grave to be widely accessible to the general public, and Robert F. Kennedy, in consultation with the First Lady and Robert McNamara, chose Arlington National Cemetery as his burial location.[7]

36. President Kennedy himself visited the Cemetery and stood where he is now buried.[8] The vista looking back toward the District from the spot where his grave now stands was one of his favorites. While looking out, he remarked, "I could stay here forever."[9]

37. John F. Kennedy's Gravesite was intentionally placed on a direct line going from Arlington House (The Robert E. Lee Memorial) across Memorial Bridge to the Lincoln Memorial. That places the Kennedy Gravesite and the Gravesites of other family members as an integral part of the overarching unifying structure that the axis from the Lincoln Memorial to Arlington National Cemetery and Arlington House embodies. This axis is visible in the Gravesites' vista, as seen in Figure 1 below.

---

[6] *Memorial Avenue Corridor Cultural Landscape*, National Park Service, (last updated Oct. 7, 2021), https://www.nps.gov/articles/600247

[7] Arlington Nat'l Cemetery, *President John Fitzgerald Kennedy Gravesite*, https://arlingtoncemetery.mil/Explore/Monuments-and-Memorials/President-John-F-Kennedy-Gravesite, (last visited Nov. 9, 2026).

[8] *Monuments: A Tomb for J.F.K.*, Time, Nov. 20, 1964, https://time.com/archive/6627023/monuments-a-tomb-for-j-f-k/.

[9] *Id.*

Figure 1: *Visitors to Arlington National Cemetery View the John F. Kennedy Eternal Flame*[10]



Contemporary design reports and memos highlight the importance of the relationship between the Gravesite and Lincoln Memorial, with President Kennedy's personal secretary noting, "Kennedy is the link between Lincoln and Lee."[11]

38. The Kennedy family played an integral role in the overarching design and construction of the site, including selecting the architects to design the Gravesites.[12]

---

[10] Christopher Evans, *Visitors to Arlington National Cemetery View the John F. Kennedy Eternal Flame* (Aug. 28, 2009), Boston Herald via Getty Images.

[11] *Subject Files: Kennedy, John F.: Assassination: Gravesite: John Carl Warnecke and Associates: 1964 (2 of 6 folders)*, at 45 (Jacqueline Bouvier Kennedy Onassis Personal Papers, Box 60, Folder 8, John F. Kennedy Presidential Library & Museum, Boston, Mass.), https://www.jfklibrary.org/asset-viewer/archives/jbkopp-sf060-008#?image_identifier=JBKOPP-SF060-008-p0024.

[12] John F. Kennedy Presidential Library & Museum, *President Kennedy's Grave in Arlington National Cemetery*, https://www.jfklibrary.org/learn/about-jfk/life-of-john-f-kennedy/fast-facts-john-f-kennedy/president-kennedys-grave-in-arlington-national-cemetery.(last updated July 21, 2026); *Subject Files: Kennedy, John F.: Assassination: Gravesite: John Carl Warnecke and Associates: 1964 (1 of 6 folders)*, at 1, (Jacqueline Bouvier Kennedy Onassis Personal Papers, Box 60, Folder 7, John F. Kennedy Presidential Library & Museum, Boston, Mass.). https://www.jfklibrary.org/asset-viewer/archives/jbkopp-sf060-007#?image_identifier=JBKOPP-SF060-007-p0002.

39. The Kennedy family also requested the creation of an Eternal Flame at the Gravesite, which was lit at the end of President Kennedy's burial service by Plaintiffs' fathers and grandfather, Robert F. Kennedy and Edward M. Kennedy, as well as Plaintiffs' aunt, the former First Lady.

40. When initially designing the site, the Kennedy family was assured that all aspects of the design would safeguard visibility of the Eternal Flame from the Memorial Bridge.[13] The architect's planning report stated: "The Eternal Flame must be large enough to be visible at night from the Lincoln Memorial end of the Memorial Bridge[.]"[14] As shown in Figure 2 below, visibility has been consistent since the Eternal Flame's initial lighting in 1963.

---

[13] *Subject Files: Kennedy, John F.: Assassination: Gravesite: John Carl Warnecke and Associates: 1964 (2 of 6 folders)*, at 23 (Jacqueline Bouvier Kennedy Onassis Personal Papers, Box 60, Folder 8, John F. Kennedy Presidential Library & Museum, Boston, Mass.), https://www.jfklibrary.org/asset-viewer/archives/jbkopp-sf060-008#?image_identifier=JBKOPP-SF060-008-p0024.

[14] *Subject Files: Kennedy, John F.: Assassination: Gravesite: John Carl Warnecke and Associates: 1964 (1 of 6 folders)*, at 30, (Jacqueline Bouvier Kennedy Onassis Personal Papers, Box 60, Folder 7, John F. Kennedy Presidential Library & Museum, Boston, Mass.) https://www.jfklibrary.org/asset-viewer/archives/jbkopp-sf060-007#?image_identifier=JBKOPP-SF060-007-p0002.

Figure 2: *State Funeral of President Kennedy: Eternal Flame (view from the Lincoln Memorial at night to Arlington House above the Eternal Flame*[15]



41. Concerns about maintaining visibility and sightlines were a theme throughout the construction of the John F. Kennedy's Gravesite. The design of the Gravesite was purposely kept "low, short" and "subordinate to the classic-revival style facade" of Arlington House.[16] In fact, a retaining wall behind the grave was removed to ensure a clear view of the Arlington House from the Gravesite.

[15] *State Funeral of President Kennedy: Eternal Flame (view from the Lincoln Memorial at night to Arlington House above the Eternal Flame)*, JFKWHP-AR8255-3T (Nov. 25, 1963), White House Photographs, John F. Kennedy Presidential Libr. & Museum, https://www.jfklibrary.org/asset-viewer/archives/jfkwhp-1963-11-25-e#?image_identifier=JFKWHP-AR8255-3T.

[16] *Monuments: A Tomb for J.F.K.*, Time, Nov. 20, 1964, https://time.com/archive/6627023/monuments-a-tomb-for-j-f-k/.

42. The Kennedy family paid for all costs in the immediate grave area, totaling $632,364. The United States federal government paid for surrounding improvements to facilitate visitor access to the John F. Kennedy's Gravesite.[17]

43. After Plaintiffs Rory Kennedy, Maxwell Taylor Kennedy, Christopher G, Kennedy, Kerry Kennedy, Courtney Kennedy, Hon. Kathleen Kennedy Townsend, and Hon. Joseph P. Kennedy II's father, and Plaintiff Hon. Joe P. Kennedy III's grandfather, Senator Robert F. Kennedy was killed in 1968, the family decided he would be buried next to his brother at Arlington National Cemetery. His Gravesite lies less than 100 feet from President Kennedy's, and a walkway connects the two.[18] Their mother and grandmother, Ethel Kennedy, is buried with Robert.[19]

44. Plaintiff Edward M. Kennedy, Jr.'s father Senator Edward M. Kennedy is also buried in Arlington National Cemetery, next to Robert and Ethel.

**Legal Process for Authorizing New Monuments**

45. Congress enacted the Commemorative Works Act of 1986 "to preserve the integrity of the comprehensive design of the L'Enfant and McMillan plans for the Nation's Capital; to ensure the continued public use and enjoyment of open space within the District of Columbia and its environs, and to encourage the location of commemorative works with the urban fabric of the District of Columbia; to preserve, protect and maintain the limited amount of open space

---

[17] John F. Kennedy Presidential Library & Museum, *President Kennedy's Grave in Arlington National Cemetery*, https://www.jfklibrary.org/learn/about-jfk/life-of-john-f-kennedy/fast-facts-john-f-kennedy/president-kennedys-grave-in-arlington-national-cemetery (last visited Nov. 9, 2026).
[18] *Robert F. Kennedy Gravesite*, Arlington Nat'l Cemetery, https://www.arlingtoncemetery.mil/Explore/Monuments-and-Memorials/Robert-F-Kennedy-Gravesite (last visited Nov. 9, 2026).
[19] *Senator Robert F. Kennedy buried*, History (Feb. 9, 2010), https://www.history.com/this-day-in-history/june-8/robert-kennedy-buried.

available to residents of, and visitors to, the Nation's Capital; and to ensure that future commemorative works in areas administered by the National Park Service and the Administrator of General Services…are appropriately designed, constructed, and located; and reflect a consensus of the lasting national significance of the subjects involved." 40 U.S.C. § 8901.

46. The Act specifies a detailed, multi-step process for authorizing, designing, and siting commemorative works—including any monument, sculpture, or memorial—situated in the District of Columbia on property administered by the NPS or the General Services Administration. As a starting point, the Act provides that any such work must be "specifically authorized" by Congress. 40 U.S.C. § 8903(a)(1). When Congress passes such authorization, it designates a "sponsor" responsible for establishing the work. *See* 40 U.S.C. § 8902(a)(4).

47. The congressionally authorized sponsor may receive a construction permit to build the commemorative work only after it: (1) consults with the National Capital Memorial Advisory Commission; (2) submits the site and design proposal for review by the Commission of Fine Arts and National Capital Planning Commission; (3) receives approvals for the site and design by the Secretary of Interior or Administrator of General Services, National Capital Planning Commission ("NCPC"), and Commission of Fine Arts; and (4) consults with "knowledgeable individuals qualified in the field of preservation and maintenance," among other requirements. *See* 40 U.S.C. §§ 8905–06.

48. For commemorative works sited in a designated zone of the capital known as "Area I," the Act imposes additional review and consultation requirements, including a specific congressional notification and authorization process, and a determination by the Secretary of the Interior or Administrator of General Services that "the subject of the commemorative work is of preeminent historical and lasting significance to the United States." 40 U.S.C. § 8908(b)(1).

49. Between 1986 and 2024, Congress, through enacting legislation, authorized 48 commemorative works to be placed in the District of Columbia or its environs.

50. In 2002, Congress reinforced its oversight over federal grounds in the District of Columbia by passing a statutory prohibition on constructing any "building or structure"—whether or not a commemorative work—"on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress." 40 U.S.C. § 8106.

51. Plans to construct monuments in the District of Columbia are subject to numerous other statutory consultation and review requirements. For example, section 106 of the National Historic Preservation Act of 1966 ("NHPA") requires agency review of the impact that any federal undertaking will have on certain historic properties. *See* 54 U.S.C. § 306108. The National Environmental Policy Act of 1970 ("NEPA") requires any "major Federal action[]" that "significantly affect[s] the quality of the human environment" to be accompanied by a "detailed statement" about the action's environmental impact. 42 U.S.C. § 4332(2)(C). And other statutory provisions subject plans to construct monuments in the District of Columbia to consultation and review by the NCPC and the Commission of Fine Arts. *See* 40 U.S.C. § 8722 (NCPC); 40 U.S.C. § 9102 (Commission of Fine Arts).

52. In addition, Congress has specified in law that National Park System areas—which include Lady Bird Johnson Park, the park that would house the planned Arch—may not be impaired or administered in derogation of the "high public value and integrity of the [National Park] System…except as directly and specifically provided by Congress." 54 U.S.C. § 100101(b)(2).

**Defendants' Plan to Construct a New Monumental Arch in Memorial Circle**

53. In October 2025, President Trump announced a plan to build a new monument on

Memorial Circle to commemorate the Nation's 250th anniversary.

54. President Trump put Vince Haley, Director of the White House Domestic Policy Council, in charge of the planned "triumphal Arch" in Memorial Circle.

55. On January 30, 2026, the White House released a Fact Sheet stating that President Trump had "announced plans for a new Independence Arch in Washington, D.C."[20]

56. President Trump has reportedly stated that he plans for the Arch to be 165 feet wide and 250 feet tall.

57. Memorial Circle, the planned site for the Arch, sits within a NPS park in the District of Columbia and is in Area I under the Commemorative Works Act.

58. The Arch is planned to be erected directly on the axis between Arlington House and the Lincoln Memorial. It will block historically significant reciprocal views between those two memorials that were consciously designed and that have existed for nearly a century. It will dominate the views of and the relationship between the surrounding memorials.

59. Congress has not authorized construction of a monumental arch in Memorial Circle.

60. Congress has not designated a project sponsor for the construction of an arch in Memorial Circle and the National Capital Memorial Advisory Commission has not consulted with a sponsor.

61. Neither the Secretary of Interior nor the Administrator of General Services has recommended to Congress that a commemorative arch be constructed in Area I.

---

[20] The White House, *Fact Sheet: President Donald J. Trump Celebrates American Greatness with the Freedom 250 Grand Prix of Washington, D.C.* (Jan. 30, 2026), https://www.whitehouse.gov/fact-sheets/2026/01/fact-sheet-president-donald-j-trump-celebrates-american-greatness-with-the-freedom-250-grand-prix-of-washington-d-c/.

62. Defendants submitted a "concept" design for a monumental arch in Memorial Circle to the U.S. Commission of Fine Arts for consideration at its April 16, 2026 meeting.

63. The Commission received approximately 1,000 public comments on the proposed Arch prior to that meeting, all opposing the Arch.

64. Despite significant negative feedback about the effects of the proposed Arch, Agency Defendants submitted a design proposal to the Commission for consideration at the Commission's May 21 meeting that did not address concerns about the height of the proposed Arch or its effect on visibility of other memorials or Arlington National Cemetery.

65. The Commission approved the Arch design at its May 21, 2026 meeting.

66. NEPA, 42 U.S.C. § 4336(a), requires an agency to "issue an environmental impact statement with respect to proposed agency action…that has a reasonably foreseeable significant effect on the quality of the human environment," 42 U.S.C. § 4336(b)(1). The agency must invite public comment "on alternatives or impacts and on relevant information, studies, or analyses with respect to the proposed agency action" prior to issuing its final statement, 42 U.S.C. § 4336a(c), and the final statement must include, among other things, analysis of "a reasonable range of alternatives to the proposed agency action," 42 U.S.C. § 4332(2)(C)(iii).

67. In June 2026, Agency Defendants issued an environmental impact assessment finding that the Arch would have no reasonably significant effect on the quality of the human environment, despite acknowledging negative effects of the Arch, including obstructing the reciprocal view between the Lincoln Memorial and Arlington House and detracting from the broader commemorative landscape. The assessment failed to consider various possible alternatives, such as smaller or more discreet commemorations.

68. Defendants submitted concept designs for a 250-foot-tall, monumental arch in

Memorial Circle, for consideration by the NCPC at its June 4, 2026, meeting. The NCPC received hundreds of pages of public comments opposing the Arch. The NCPC found that the Arch would "[f]ully obstruct reciprocal views of the Lincoln Memorial and Arlington from the higher elevations of Arlington House and the Lincoln Memorial terrace."[21]

69. The National Historic Preservation Act requires a federal agency to "take into account the effect" of its undertakings "on any historic property," 54 U.S.C. § 306108, including by consulting extensively with State Historic Preservation Officers and other stakeholders and receiving public input, 36 C.F.R. §§ 800.3(c)–(f). Consultation on an undertaking pursuant to Section 106 of the Act is meant to "commenc[e] at the early stages of project planning" in order to "identify historic properties potentially affected by the undertaking, assess its effects and seek ways to avoid, minimize or mitigate any adverse effects on historic properties." 36 C.F.R. § 800.1(a).

70. In June 2026, after the Commission of Fine Arts gave design approval and Defendants provided their environmental assessment, Defendants initiated the Section 106 process by posting an Assessment of Effects Report online and gave the public a short window to provide comments. On July 10, 2026, Defendants invited consulting parties to submit comments.

71. After receiving significant negative comments about the project, Defendants released a revised Assessment of Effects Report on August 28, 2026, that concluded, among other things, that the Arch would adversely affect several historic properties, including Arlington National Cemetery.

72. On September 24, 2026, the Advisory Council on Historic Preservation terminated

---

[21] NCPC Commission Action (July 9, 2026), https://www.ncpc.gov/docs/actions/2026July/8778_New_Monumental_Arch_Commission_Action_Jul2026.pdf.

the consultation process, stating that additional consultation was unlikely to result in agreement.

73. On September 20, 2026, President Trump stated that he had decided to convert the proposed Arch into a military complex for drones and snipers that would house a large number of drones and large quantities of sniper ammunition.

74. On November 5, 2026, the NCPC considered Defendants' plans for the Arch. These plans did not include plans to use the Arch as a military complex.[22]

75. The NCPC received "approximately 1,300 comments" the "vast majority" of which were "in opposition to the project, specifically the height, scale, location, traffic impacts, and lack of sufficient public review process for the project."[23]

76. At the conclusion of the November 5, 2026 meeting, the NCPC voted to approve Defendants' site and building plans for the Arch.

**Injury to Plaintiffs**

77. Courts have long recognized a family's interest in a relative's remains as the family's own interest. *See Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 124 S. Ct. 1570, 158 L. Ed. 2d 319 (2004) (recognizing that a family's unique personal stake in honoring and mourning its dead is "f[ound] in our case law and traditions"); *see also, e.g.*, *Schuyler v. Curtis*, 147 N.Y. 434, 447, 42 N.E. 22, 25 (1895) ("A privilege may be given the surviving relatives of a deceased person to protect his memory, but the privilege exists for the benefit of the living, to protect their feelings, and to prevent a violation of their own rights in the character and memory of the deceased.").

78. Plaintiffs have significant personal and aesthetic interests in the Kennedy

[22] NCPC, Executive Director's Recommendation (Nov. 5, 2026), https://www.ncpc.gov/docs/actions/2026November/8778_New_Monumental_Arch_Staff_Report_Nov2026.pdf.
[23] *Id*. at 13.

Gravesites, the unobstructed view between the Lincoln Memorial and John F. Kennedy's Gravesite; and the view of the Eternal Flame from the Lincoln Memorial and Memorial Bridge.

79. Plaintiffs have paid and will continue to pay homage to their slain fathers, mother, grandfather, and uncles by going to the Gravesites. Plaintiffs regularly visit and intend to continue visiting the Gravesites, the Lincoln Memorial, and the Memorial Bridge. Each time they do so, they appreciate the unique and particularly meaningful arrangement of the Gravesites, also reflecting how their family legacy fits within the nation's history.

80. Plaintiffs and their relatives often visit the Gravesites early in the morning, before Arlington National Cemetery officially opens, in order to maintain privacy while honoring their family.

81. They do so in their capacity as family members, and also as representatives of the Kennedy family. To this day, the Kennedy Gravesites remain an enduring and highly frequented memorial that carries meaning for millions of Americans. Plaintiffs feel a responsibility to ensure that all Americans can continue to appreciate the Gravesites as Robert F. Kennedy, Edward M. Kennedy, Ethel Kennedy, and the entire Kennedy family intended.

82. In their visits to the Kennedy Gravesites, Plaintiffs look out at the vista from the Gravesites, comforted by the fact that their fathers and uncles loved that view. While visiting both the Gravesites and the Lincoln Memorial, Plaintiffs pray and reflect upon the relationship between the Lincoln Memorial, the Kennedy Gravesites, and the Eternal Flame, finding solace in seeing the legacy of the Kennedy family memorialized spatially and instantiated within the District of Columbia. They have always believed that these remembrances would remain a permanent part of the nation's capital.

83. But the Arch would fundamentally disrupt that intended relationship and the

design of the Gravesites by obstructing views from the Kennedy family's Gravesites to the Lincoln Memorial and vice versa.

84. Moreover, if the Arch were constructed, Plaintiffs' visits to these graves would literally be shadowed by the Arch, an unlawfully-created structure.[24] The shadow the Arch would leave over the Kennedy Gravesites would fundamentally alter the experience of visiting the Gravesites. The forensic study indicates that these shadows will be most pronounced in the morning before the Cemetery officially opens—precisely the moment when Plaintiffs and other family members typically visit the Gravesites. Plaintiffs will not be able to recognize their forefathers' service and sacrifice to this country without distraction.

85. Instead, Plaintiffs, and the millions of Americans who come to the Arlington National Cemetery and the Kennedy family's Gravesites to pay their respects, will have their visit interrupted by the looming presence of the Arch. Their view of the Kennedy Gravesites from the Memorial Bridge—which the Kennedy family insisted upon because of President Kennedy's love of that vista—would be impeded.

86. That constitutes nothing less than a permanent denigration of the Kennedy Gravesites and the final resting place for Plaintiffs' parents and grandparents. Plaintiffs would never again be able to appreciate both sites as they always have before, and as the Kennedy family always intended.

87. Plaintiffs have a special interest in seeing the Kennedy legacy preserved, and in ensuring these memorials comport with the wishes of their parents, grandparents, and entire

---

[24] Jarrett Ley, Aaron Steckelburg & Dan Diamond, *Trump's arch would cast shadow on Arlington graves, including Kennedy's*, The Washington Post (Oct. 27, 2026), https://www.washingtonpost.com/investigations/interactive/2026/10/27/trumps-arch-would-cast-shadow-arlington-cemetery/.

family.

## CLAIMS FOR RELIEF

**COUNT ONE**
**Violation of the Administrative Procedure Act,**
**5 U.S.C. § 706(2), contrary to law**
**(Against Agency Defendants)**

88. The Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), prohibits federal agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

89. Agency Defendants' decision to authorize construction of an Arch in Memorial Circle is final agency action under the APA.

90. The Arch is a "monument[]…or other structure" that is "designed to perpetuate in a permanent manner the memory of an…event or other significant element of American history," 40 U.S.C. § 8902(a)(1); therefore it is a commemorative work subject to the requirements of the Commemorative Works Act.

91. The Commemorative Works Act requires that a commemorative work built on NPS land in the District of Columbia must be (1) "specifically authorized by law," 40 U.S.C. § 8903(a)(1); (2) assigned a congressionally authorized sponsor that must consult with the National Capital Memorial Advisory Commission, 40 U.S.C.§ 8905(a)(1); and (3) given additional "approv[al] by law" if it is to be located within the region designated as Area I, 40 U.S.C. § 8908(b)(1).

92. Memorial Circle is NPS-administered land located within the District of Columbia, and it sits within Area I as defined by the Commemorative Works Act.

93. The construction of a commemorative arch in Memorial Circle has not been

specifically authorized by law, has not received consultation between a congressionally authorized sponsor and the National Capital Memorial Advisory Commission, and has not received the additional approval of law required for commemorative works sited in Area I.

94. Agency Defendants' decision to authorize construction of the Arch in Memorial Circle is contrary to the Commemorative Works Act.

**COUNT TWO**
**Violation of the APA, 5 U.S.C. § 706(2), contrary to law**
**(Against Agency Defendants)**

95. The APA, 5 U.S.C. § 706(2), prohibits federal agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

96. Agency Defendants' decision to authorize construction of an Arch in Memorial Circle constitutes final agency action under the APA.

97. 40 U.S.C. § 8106 provides that "[a] building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress."

98. The Arch is a "building or structure" within the meaning of 40 U.S.C. § 8106, and Memorial Circle is a "reservation, park, or public grounds of the Federal Government in the District of Columbia."

99. Congress has not given express authority for an Arch to be constructed in Memorial Circle.

100. Agency Defendants' decision to authorize construction of an Arch in Memorial Circle is contrary to 40 U.S.C. § 8106.

**COUNT THREE**
**Violation of the APA, 5 U.S.C. § 706(2), arbitrary and capricious**
**(Against Agency Defendants)**

101. The APA, 5 U.S.C. § 706(2), prohibits federal agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

102. Agency Defendants' decision to authorize construction of an Arch in Memorial Circle constitutes final agency action under the APA.

103. Agency action is arbitrary and capricious under the APA if an agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

104. Despite finding that the Arch will create irreversible adverse impacts to the historic landscape in and around Arlington National Cemetery and that the Arch faces immense popular opposition, Agency Defendants have approved construction without giving consideration to alternative design, site, and building plans.

105. The Arch's planned conversion into a dual-purpose military facility—which could be used to launch drones or stockpile combustible ammunition—was not placed before any of the administrative bodies that evaluated the project's impact. Authorizing construction on the existing administrative record thus fails to consider an important aspect of the project.

106. Agency Defendants' decision to authorize construction of an Arch in Memorial Circle is arbitrary and capricious.

**COUNT FOUR**
***Ultra Vires***
**(Against All Defendants)**

107. Plaintiffs have a non-statutory cause of action to enjoin and declare unlawful official executive action that is *ultra vires* and in excess of legal authority.

108. The Commemorative Works Act and 40 U.S.C. § 8106 forbid the construction of Defendants' planned Arch absent congressional authorization.

109. Congress has not authorized construction of the Arch.

110. Additional statutes—including, but not limited to, the National Historic Preservation Act of 1966 and NEPA—impose procedural requirements that must be satisfied before federal projects such as the construction of Defendants' planned Arch may be executed.

111. Defendants intend to imminently begin construction of the Arch without complying with these statutory requirements.

112. Defendants' construction of the Arch without congressional approval and without satisfaction of procedural prerequisites is in excess of the powers that Congress has delegated to Defendants and is contrary to specific statutory requirements.

113. Absent *ultra vires* review, Plaintiffs have no meaningful and adequate opportunity for judicial review.

114. No statutory scheme forecloses judicial review of Defendants' actions in constructing the Arch.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court assume jurisdiction over this matter and grant the following relief:

A. Declare unlawful and vacate Defendants' authorization for construction of the Arch in

Memorial Circle as contrary to law and arbitrary and capricious;

B. Declare construction of the Arch without congressional authorization and without satisfying statutory procedural requirements to be unlawful;

C. Enter a preliminary and permanent injunction prohibiting Defendants from taking any steps to approve, authorize, or construct the Arch absent congressional authorization, designation by Congress of a sponsor, and compliance with all statutory requirements;

D. Award Plaintiffs their reasonable costs and attorneys' fees; and

E. Grant such other relief as this Court may deem just and proper.

Dated: November 10, 2026

Respectfully submitted,

*/s/ Norman L. Eisen*

Norman L. Eisen (D.C. # 435051)
Stephen A. Jonas (D.C. # 90037069)
Joshua G. Kolb (# NY0628)
Brian C. Ward (D.C. # 90046907)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
norman@democracydefenders.org
steve@democracydefenders.org
joshua@democracydefenders.org
brian@democracydefenders.org

*Counsel for Plaintiffs*